UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
UNITED STATES OF AMERICA,

                Plaintiff,                 **REPORT AND**
                                                                    **RECOMMENDATION**

   - v -
                                                                    CV-00-1834 (BMC)(VVP)

NELLIE R. JOHNSON,
                Defendant.
----------------------------------------------------------x

      In response to a writ of garnishment served on her employer, the defendant Nellie R. Johnson, acting *pro se*, filed the motion to reopen this action that is now before the court. The judgment that led to the garnishment was entered by default in August 2000, and rested on the defendant's failure to make payments on a student loan. In making her motion to reopen the case, the defendant contended that she never had notice of the action at the time the default judgment was entered and believed that the student loan had been repaid in full. Affirmation of Nellie R. Johnson [Dkt. Ent. 6-1].

      Following referral of the motion to me by Judge Cogan, I held a series of conferences and hearings to gather facts in an effort to determine whether there exists a basis for reopening the action and to resolve the matter without further litigation if possible. As the efforts at resolution have proved unsuccessful, I issue the following report and recommendation based on the papers filed by the parties and on all other proceedings held to date.

## BACKGROUND

      The facts are largely undisputed. This action was commenced by the government in 2000 in an effort to collect a student loan debt that the plaintiff had incurred in 1989 to pay

college expenses for her son. See Affirmation in Opposition to Plaintiff's [sic] Motion ("Aff. Opp.") Ex. B [Dkt. Ent. 9]. The loan was made by a Colorado bank in the amount of $4,000, and was guaranteed by the government. At some point, the loan went into default and the government eventually assumed the debt. See Certificate of Indebtedness (found at Aff. Opp. Ex. B [Dkt. Ent. 9], annexed to Complaint). A number of letters were sent to the defendant by the government from time to time thereafter in an effort to collect the debt, Aff. Opp. Ex. F; Tr. 3/24/15 at 13:13 to 14:24 [Dkt. Ent. 23],[1] and on at least two occasions the government apparently seized tax refunds to reduce the debt before filing the action.[2] Tr. 11/20/14 at 6:23 to 7:1 [Dkt. Ent. 19]. By the time the action was filed, unpaid principal and interest totaled in excess of $9,000 and judgment was eventually entered in the total amount of $9,456.31. Default Judgment, Aug. 22, 2000 [See Dkt. Ent. 3].

Efforts to collect on the judgment thereafter were sporadic and consisted almost entirely of letters sent to the defendant without response. Toward the end of 2013, the government obtained an updated address for the defendant, to which a notice was sent advising of the government's intent to offset future payments, such as tax refunds, against

---

[1] "Tr." followed by a date refers to the transcript of proceedings before the court on the date indicated. The ensuing numbers indicate the specific page and line numbers to which reference is made.

The letters were sent to the correct street address but with the wrong ZIP code. Therefore, although none were apparently returned as undelivered, they may not have been received by the defendant. In 2013 another mailing sent to the address was returned as undeliverable after the defendant had moved to her present address in Croton-on-Hudson.

[2] On one of the two occasions, the refund was later returned to the defendant. The other occasion was not discovered until after the defendant filed the instant motion, and is discussed in further detail below.

the debt.  See Aff. Opp. Ex. H [Dkt. Ent. 9] and Tr. 3/24/15 at 17:6-10 [Dkt. Ent. 23].  In 2014, a rather substantial tax refund was again seized but again returned to the defendant prompting several letters between the defendant and counsel for the government.  Tr. 3/24/15 at 19:23 to 20:3 [Dkt. Ent. 23].  Finally, the notice of garnishment served on her employer prompted the defendant to file the instant motion.[3]

## DISCUSSION

The plaintiff's motion to reopen the case is treated as a motion to vacate the default judgment.  In deciding such motions the court is required to consider "the wilfulness of the default, the existence of a meritorious defense, and the level of prejudice that the non-defaulting party may suffer should relief be granted."  *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001) (citing *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir. 1994); *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983)).  Because defaults are disfavored, and there is a distinct preference for cases to be decided on the merits, *see Pecarsky*, 249 F.3d at 171, any doubts concerning the motion are to be resolved in favor of the party seeking relief from the judgment.  *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)); *accord, e.g., Home Loan Inv. Bank, F.S.B. v. Goodness & Mercy, Inc.*, No. 10 CV 4677, 2011 WL 1701795, at *4 (E.D.N.Y. Apr. 30, 2011).

As to the wilfulness of the default, the evidence is decidedly muddled.  The defendant insists that she was never aware of the action and the entry of the default judgment until the

---

[3]The defendant's employment has since ended.  There is no indication that the termination of her employment is in any way related to the garnishment.

-3-

plaintiff's recent efforts to collect the judgment by seizing her tax refund and seeking garnishment. She contends that she checked her credit report periodically but never found an entry reflecting the debt and never experienced difficulty obtaining credit. She does not deny taking out the loan, and was aware that she had fallen behind. Tr. 10/9/14 at 7:24 to 8:8 [Dkt. Ent. 17]. But she believed that the loan had been paid in full once a tax refund was seized by the government in late 1999 and therefore had no reason thereafter to believe that any action would be taken against her.[4] *Id.* at 7:1-5.

The plaintiff on the other hand has clear proof of service of the summons and complaint on a person of suitable age and discretion as established by an affidavit of service that was filed when the action was commenced in 2000. See Affidavit of Service [Dkt. Ent. 2]. Service was accomplished at a street address which the defendant concedes was her residence at the time.[5] Tr. 10/9/14 at 3:6 to 4:7 [Dkt. Ent. 17]; Tr. 3/24/15 at 21:5-11 [Dkt. Ent. 23]. Such service comports with the service requirements of Rule 4(e)(2)(B).[6] Nevertheless, the description of the person to whom the summons and complaint were

---

[4] The defendant also referred at times to a payment in the amount of $1,100 that was supposedly overlooked by the government, but provided no evidence of any such payment. She may have been referring to one of the tax offsets in the amount of $1,350, as reflected in documents provided by the government, which was later refunded. Tr. 10/9/14 at 14:6 to 15:1 Dkt. Ent. 17].

[5] The defendant points out that she considered her address to be in Rosedale rather than Jamaica, but an online map search discloses the same location for 245-27 149th Avenue regardless of whether the search is run with the address in Rosedale or in Jamaica.

[6] A determination that service was not properly made would require the court to vacate the default judgment on the ground that the court had not acquired personal jurisdiction over the defendant. *United States v. Kadoch*, No. 96 CV 4720, 2011 WL 2680510, at *4 (E.D.N.Y. June 10, 2011) (citing *Jaffe & Asher v. Van Brunt*, 158 F.R.D. 278, 279 (S.D.N.Y.1994); *Kao Hwa Shipping Co., S.A. v. China Steel Corp.*, 816 F.Supp. 910, 913 (S.D.N.Y.1993)), *report and recommendation adopted*, No. 96 CV 4720, 2011 WL 2680362 (E.D.N.Y. July 8, 2011).

delivered does not match the defendant, and it is therefore possible that even though service was properly made, the documents did not ultimately reach the defendant. Thus, giving the defendant the benefit of the doubt, as required, I do not conclude that the defendant's failure to respond to the complaint in 2000 was wilful.

The defendant founders, however, on the question whether there exists a meritorious defense. To succeed in showing the existence of one, a defendant must submit evidence that if proven at trial would constitute a complete defense. *Pecarsky*, 249 F.3d at 173 (citing *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993)). Although the test of such a defense is not measured by whether it is likely to be successful, the evidence submitted by the defendant must consist of something more than conclusory denials. *Enron*, 10 F.3d at 98.

As noted, the defendant concedes that she took out the loan. Tr. 10/9/14 at 6:6-9 [Dkt. Ent. 17]. Moreover, she concedes that she did not make timely payments on the loan and that the loan remained at least partially unpaid until some point in 1999 when a tax refund in the amount of $2,292 was seized. *Id.* at 7:24 to 8:8. Although she says she believed that the tax refund was sufficient to pay off any unpaid amounts owed on the loan, she has offered no proof of any payments that she made prior to that point, nor any other proof to support a contention that the loan had been paid in full. Clearly, the tax refund would not have been sufficient by itself to discharge the indebtedness in the absence of other previous payments since the principal amount of the loan was $4,000, and interest had been accruing for 10 years by the time the refund was seized. Although the defendant may have had difficulty compiling records dating back to the 1990s to provide proof of payments she may

have made, mere assertions of a belief that sufficient payments had been made to extinguish the debt are not enough to establish the possible existence of a complete defense to the action.

There is one matter, however, that justifies a modification of the judgment. After the defendant's motion was filed, the government advised the defendant and the court that the tax refund of $2,292 discussed above had not been reflected in the government's records concerning the debt at the time the default judgment was entered. See Status Report, Nov. 6, 2014 [Dkt. Ent. 11]; Tr. 3/24/15 at 12:10-14 [Dkt. Ent. 23]. Although the refund had been seized by the government, it had not been credited against the indebtedness. Thus, the Certificate of Indebtedness upon which the court relied in calculating the judgment was erroneous.[7] Accordingly, the government should be required to submit a new Certificate of Indebtedness reflecting the amount owed on the loan as of August 22, 2000, the date when the default judgment was entered. To insure that the amended judgment reflects all payments and other credits that were applied to the indebtedness, the Certificate of Indebtedness should be accompanied by an affidavit or affirmation that provides an explanation of how the amounts reflected in the Certificate were calculated, as well as a statement of the interest rate used to arrive at the interest that had accrued up to August 22, 2000.

---

[7] The Certificate of Indebtedness was annexed to the Complaint, a copy of which is among the documents attached as Exhibit B to the plaintiff's Affirmation in Opposition [DE 9].

## CONCLUSION

For the foregoing reasons, I recommend that the defendant's motion to reopen the case be denied, but that the government be required to recalculate the amount due and owing at the time the default judgment was entered to take into account the tax refund that had been seized but not credited against the defendant's indebtedness, and that the default judgment be appropriately amended.

\*       \*       \*       \*       \*       \*

The parties are advised that any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2nd Cir. 2002); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

Respectfully Recommended:

*Viktor V. Pohorelsky*
VIKTOR V. POHORELSKY
United States Magistrate Judge

Dated:    Brooklyn, New York
          July 29, 2015

```
No objections having been raised, and the Court having reviewed this R&R, the
Court adopts it as its ruling on defendant's motion to reopen.  That motion is
denied, and the Government is required to file a new COI within 14 days, upon
which the Clerk shall enter an Amended Judgment.
SO ORDERED: 8/24/15                          -7-
```